UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | \* | CR. 09-40007 |
| Plaintiff, | \* | |
| vs. | \* | REPORT AND RECOMMENDATION |
| CHRISTOPHER D. KODGER, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending is Defendant's Motion to Suppress Statements (Doc. 19). A hearing was held on Wednesday, October 14, 2009. Defendant was personally present and represented by his counsel of record, Assistant Federal Public Defender Mr. William Delaney. The Government was represented by Assistant United States Attorney Mr. Jeff Clapper. Health and Human Services Special Agent Christopher Barlow testified at the hearing. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be **DENIED**.

## JURISDICTION

Defendant is charged in an Indictment with Failure to Pay Child Support in violation of 18 U.S.C. § 228(a)(3). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Piersol's Standing Order dated November 29, 2006.

## FACTUAL BACKGROUND

The Defendant, Christopher Kodger, was indicted by a South Dakota grand jury on January 6, 2009. A warrant for his arrest was issued the next day. *See* Doc. 1 and unnumbered warrant on

file. Defendant was arrested in the Western District of New York on July 16, 2009. The circumstances of his arrest and his subsequent interview by DHHS Special Agent Christopher Barlow (discussed in more detail below) form the basis of the pending Motion to Suppress. Defendant made his initial appearance in Rochester, New York, and was released to appear on the charges in South Dakota. *See* Doc. 4. Upon his appearance on August 11, 2009 in South Dakota, Defendant was again released upon the same terms and conditions as initially set by the Magistrate Judge in Rochester, New York. *See* Doc. 11.

DHHS Special Agent Christopher Barlow testified at the evidentiary hearing. He explained that he became involved in this case after he was contacted by South Dakota DHHS Agent Kory Dumdei. Agent Barlow conducted surveillance on Mr. Kodger before Mr. Kodger eventually self-surrendered on July 16, 2009. Agent Barlow concluded Mr. Kodger was associated with a vehicle that was registered to Pastor Robert Ring. Barlow interviewed Pastor Ring. Pastor Ring told Barlow that Kodger lived and worked at Ring's church. Kodger was not present at the church that day, however, because Kodger had driven to Rochester, New York. Agent Barlow left his telephone number with Pastor Ring and told Ring he needed to reach Kodger and resolve the matter that same day. Agent Barlow left the church but had an uneasy feeling after his interview with Pastor Ring. Barlow called Pastor Ring on his cell phone later that same day but Pastor Ring was not at the church. Barlow asked Ring where Ring was, and Ring admitted he was driving to Rochester. Ring claimed Kodger was undergoing a medical procedure.

Agent Barlow also drove to Rochester and met Pastor Ring there. They had a discussion and agreed that Mr. Kodger would self-surrender that day (July 16, 2009) in Rochester. Mr. Kodger self-surrendered at the federal courthouse in Rochester. When Mr. Kodger arrived at the courthouse, he was escorted to the Marshals office on the second floor. Agent Barlow conceded that although Kodger was not formally arrested until he went upstairs to the Marshals office, he was effectively in custody the moment he entered the courthouse. Agent Barlow, Mr. Kodger and Pastor Ring were met by the U.S. Marshals Service on the second floor of the courthouse. Mr. Kodger handed his personal belongings to Pastor Ring, and then was processed by the Marshals. Agent Barlow read the *Miranda* warnings to Mr. Kodger immediately before the Marshals processed Mr. Kodger. Barlow wanted to *Mirandize* Kodger before processing because Barlow knew he would interview

2

Kodger later, and he believed Kodger might also be interviewed by others while in custody. Barlow explained there was some conversation which occurred in the few moments between the time Kodger arrived at the courthouse and the time Barlow administered the *Miranda* warnings in the Marshals office, but he cannot remember anything specific which was said. He believes the conversation consisted primarily of him explaining the process and what was happening to Mr. Kodger, because Mr. Kodger was understandably very upset at the prospect of being arrested.

Barlow read the *Miranda* rights from a small piece of paper he carries in his pocket. He read the entire warning to Kodger, then asked twice whether Kodger understood. Kodger indicated he did. Mr. Kodger followed instructions appropriately. Barlow did not immediately interview Kodger, but instead waited until the Marshals finished processing him. Barlow interviewed Kodger while Kodger was in the holding cell in the Marshals office. As per his usual procedure, Barlow did not obtain a recording of the interview nor did he obtain a written waiver of Mr. Kodger's *Miranda* rights.

Kodger was in the cell but Barlow remained outside the cell. Barlow did not make any threats against Mr. Kodger. Barlow did not make any physical contact with Kodger except to shake his hand upon meeting him at the courthouse. Barlow made no promises to Mr. Kodger. Barlow described Kodger as upset at his circumstances, but Barlow indicated Kodger understood what was going on. Kodger told Barlow he suffered from PTSD and skin cancer, and that he had undergone a medical procedure that day. Kodger told Barlow he had pending legal proceedings with the Catholic church, and when Barlow mentioned Kodger's boat, Kodger became agitated and accused "everyone" of just wanting to take his boat away from him. The interview lasted only about fifteen or twenty minutes, and concluded when Agent Barlow determined it was not productive (also because the U.S. Probation Officer and Federal Public Defender had arrived).

Mr. Kodger moves to suppress the statements he made to Agent Barlow. The basis for the motion is Mr. Kodger's assertion that his statements were custodial and made in the absence of a knowing, intelligent waiver of his *Miranda* rights. In support of his argument, Defendant asserts (1) the *Miranda* waiver was not secured in writing; (2) he was suffering from a mental illness at the time of the interrogation. *See* Defendant's motion, Doc. 19, ¶¶ 3 and 4.

## DISCUSSION

As a general rule, the burden of proof is on the defendant who seeks to suppress evidence. *United States v. Phillips,* 540 F.2d 319 (8th Cir.1976. The Government, however, bears the burden of proving by a preponderance of the evidence that Miranda warnings were either not necessary or that they were given and effectively waived. *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966); *United States v. Short,* 790 F.2d 464, 467-68 (6th Cir. 1986); *United States v. Charbonneau,* 979 F.Supp. 1177, 1181 (S.D. Ohio 1997). The parties agree in this case that the Defendant was in custody when Agent Barlow interviewed him. There is no dispute, therefore, that *Miranda* warnings were necessary. The issue in this case, therefore, is whether Miranda warnings were effectively waived.

A statement is not compelled within the meaning of the Fifth Amendment if the defendant voluntarily, knowingly and intelligently waives his constitutional rights. *Colorado v. Spring,* 479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987). The inquiry regarding whether the waiver was compelled has two distinct prongs: first, the relinquishment must have been voluntary in the sense that it was a free and deliberate choice rather than the product of intimidation, coercion or deception. Second, the waiver must have been made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* If the totality of the circumstances reveals <u>both</u> a voluntary waiver and the requisite level of comprehension the Court may properly conclude the *Miranda* rights have been effectively waived. *Id.*

### A. The Effect of Kodger's Pre-Miranda Statements and the Absence of a Written or Recorded Waiver

In his written submission Mr. Kodger made specific note of the absence of a written waiver of his *Miranda* rights and/or a recording of the July 16, 2009 interview. During the evidentiary hearing, Kodger also emphasized the brief conversation which occurred between the time he entered the courthouse and the time he received the *Miranda* warnings in the Marshals office. (Barlow testified he could not recall any of the specifics of the conversation, but that he guessed it pertained

to the general procedure and how the process would unfold).[1] No evidence was presented which indicated this conversation elicited an incriminating response from Kodger. It was only after Kodger was *Mirandized* that he made any statements which could be construed as incriminating. No authority has been found to support the proposition that *Mirandized* statements must be suppressed merely because they were preceded by non-*Mirandized* but non-incriminating statements. The defendant in *United States v. Tobin,* 429 F.2d 1261 (8th Cir. 1970) argued his *Mirandized* statements to the FBI should be suppressed because his prior statements to the local police were non-*Mirandized*. The prior statements, however, were not incriminating. The Eighth Circuit affirmed the trial court's refusal to suppress the FBI statements, and noted:

> Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag.
>
> But here the cat was not out of the bag. The accused had made no prior damaging statements at the time of the FBI interrogation, indeed, had made no statements at variance with his interests either then or at the time of trial. Thus no element of involuntariness negating the effectiveness of the Miranda warnings is present here.

*Id.* at 1264-65 (citations omitted).

Kodger also implies his waiver of *Miranda* rights was not voluntary, knowing and intelligent because he did not specifically state he wished to waive them, and Agent Barlow did not specifically ask for nor obtain a written waiver. *Miranda* requires neither a specific inquiry about nor a specific verbalization of the desire to waive. "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but it is not inevitably either necessary or sufficient to establish waiver." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). *See also, United States v. House,* 939 F.2d 659, 662 (8th Cir. 1991) ("Moreover, waiver may be inferred from the fact that the defendant responded to questions posed by the interviewer after being advised of his rights.");

---

[1] The substance of conversation which occurred before the reported interview is unknown. Agent Barlow testified he wanted to administer the *Miranda* warning as soon as possible because he planned to interview Kodger after he was processed. In any event, there has been no evidence presented that Kodger made an incriminating statement before he was advised of his *Miranda* rights.

*United States v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997) (refusal to sign waiver form does not render further questioning improper); *United States v. Toro-Pelaez*, 107 F.3d 819, 825 (10th Cir. 1997)("An express statement of waiver by the defendant is not required; instead waiver can be inferred from the defendant's actions and words."). That Kodger and Barlow had a brief, general discussion in the courthouse before the *Miranda* warnings were given, and that Kodger did not sign written *Miranda* waiver, therefore, does not invalidate an otherwise valid *Miranda* waiver.

### B. Whether the July 16, 2009 Statements to Agent Barlow Were Voluntary

"In considering whether a confession was voluntary, the determinative question is whether the confession was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired." *United States v. Pierce*, 152 F.3d 808, 812 (8th Cir. 1998). The Court must look to the totality of the circumstances, "including the conduct of the law enforcement officials and the defendant's capacity to resist any pressure." *Id.* Also, "[p]olice coercion is a necessary prerequisite to a determination that a waiver was involuntary . . . " *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998). In other words, "personal characteristics of the defendant are constitutionally irrelevant absent proof of 'coercion brought to bear on the defendant by the state.'" *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987)(citations omitted). Finally, "[c]oercive official activity is a necessary predicate to a finding that a statement is not voluntary. The Fifth Amendment privilege against self- incrimination is not concerned with other types of psychological pressures. An incriminating statement is not involuntary unless extorted from the accused by means of coercive activity." *U.S. v. Goudreau* 854 F.2d 1097, 1099 (8th Cir. 1988)(citations omitted).

In this case, Kodger has not seriously argued that Agent Barlow engaged in any coercive conduct, and no evidence has been presented that he did. Barlow testified the only physical contact he had with Kodger was to shake his hand upon meeting him. No threats or promises were made, and the interview lasted only fifteen or twenty minutes. I find, therefore, that Kodger's July 16, 2009 statements were voluntarily made.

### C. Whether the July 16, 2009 Statements Were Knowing and Intelligent

The second prong of the inquiry is whether Mr. Kodger's *Miranda* waiver was knowingly

6

and intelligently made. "That is, that [he] understood that he had the right to remain silent and that anything he said could be used as evidence against him." *Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987). This is the portion of the waiver inquiry which is apparently disputed by Mr. Kodger.

In his written motion, Mr. Kodger asserts he was suffering from a mental illness at the time of the interrogation. Agent Barlow testified that Kodger informed him during the interview that he (Kodger) suffered from PTSD. There was also evidence presented during the evidentiary hearing that Kodger may have undergone a medical procedure earlier in the day on July 16, 2009. No evidence was presented, however, that either the effects of the medical procedure or any symptoms of PTSD manifested themselves during the interview or rendered Mr. Kodger incapable of knowingly and intelligently waiving his *Miranda* rights.

That the second prong of the inquiry requires the waiver to be made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it "does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring,* 479 U.S. at 574, 107 S.Ct. at 857. Rather, the inquiry is much simpler: did the suspect understand his basic privileges guaranteed by the Fifth Amendment, and the consequences of speaking freely to law enforcement officers? *Id.* 479 U.S. at 574-75, 107 S.Ct. at 857-58.

The Eighth Circuit and other courts have declined to adopt a *per se* rule regarding a level of competency required to validly waive *Miranda* rights. *United States v. Turner,* 157 F.3d 552, 555-56 (8th Cir. 1998). In *Turner,* the Court rejected the defendant's claim that his waiver was not knowing and intelligent because he was impaired by a low IQ, drug intoxication, and mental illness. In doing so, the Court noted the defendant's borderline intelligence but that he was clearly intelligent enough to understand his rights. *Id.* at 555. The officer who took his statement testified the defendant gave accurate information. *Id.* And the Court explained that even if he was under the influence of PCP as he claimed, the evidence showed that he nevertheless was capable of understanding and knowingly waiving his rights. *Id.* at 556. *See also, United States v. Makes Room For Them,* 49 F.3d 410, 414 (8th Cir. 1995); *United States v. Casal,* 915 F.2d 1225 (8th Cir. 1990). Case law doesn't

clearly describe when a suspect "crosses the line" and becomes too incoherent to comprehend his rights and the consequences of waiving them. The Fifth Circuit tried to explain it in *United States v. Martin*, 434 F.2d 275 (5th Cir. 1970).

> A confession otherwise voluntary is not to be excluded because the accused was intoxicated when he made it. The fact that the confessor was intoxicated is a circumstance affecting its credibility, and is to be considered by the jury.
>
> If the intoxication of the confessor produced actual mania, or rendered the confessor unconscious of what he was saying, his confession is inadmissible. However, the fact that the accused had but recently recovered from delirium tremens will not render his confession inadmissible.
>
> The fact that the defendant was intoxicated when he confessed is immaterial if he had sufficient mental capacity at the time to know what he was saying and to have voluntarily intended it.

*Id.* at 278 (*quoting* 2 Wharton's Criminal Evidence (12th Ed. p. 122, 388)(other citations omitted). *See also, Custodio v. Fisher*, 2007 WL 2819313 (D. Idaho) (relevant inquiry is whether suspect had requisite level of comprehension from totality of the circumstances); *United States v. Simmons*, 526 F.Supp.2d 557 (E.D. N.C.) (Court analyzes suspect's intelligence, education, age and familiarity with the justice system, when suspect claims mental impairment from drugs or alcohol, courts apply a test of coherence, of an understanding of what is happening in determining the validity of waivers); *United States v. Cellemme*, 431 F.Supp. 731 (D.C. Mass. 1977) (court carefully sifts through evidence to determine whether suspect was intoxicated and if so, whether as a result of his intoxication and the totality of the circumstances the confession most probably was not the product of any meaningful act of volition).[2]

While Mr. Kodger may have been distressed during his interview with Agent Barlow, Barlow testified that Kodger was coherent and followed directions. Kodger was aware of what he was saying, the nature of his rights and the consequences of waiving them. Despite his medical condition, the behavior Mr. Kodger exhibited as described by the uncontradicted testimony of Agent Barlow demonstrates the decision to waive his constitutional rights was knowing and intelligent. *See, United States v. Hogan*, 993 F.Supp. 1008, 1012 (D. Kansas 1996) (valid *Miranda*

---

[2]It is acknowledged that Mr. Kodger does not claim his waiver was unknowing because of drug intoxication. The cases are applicable, however because the inquiry is the same whether the alleged impairment is caused by mental illness or drug intoxication: whether the suspect had the requisite level of comprehension to know what he was saying and to have voluntarily intended to say it.

waiver where defendant "made a couple of statements that were a little abnormal" but demonstrated an adequate ability to understand and communicate); *United States v. Zamarripa*, 544 F.2d 978, 981 (8th Cir. 1976) (finding of valid *Miranda* waiver upheld where defendant "offered no testimony to rebut that of [agents] concerning the circumstances leading to his incriminating statements . . ."). I find, therefore, that Mr. Kodger's July 16, 2009 statements were knowing and intelligent.

## CONCLUSION

For the reasons more fully explained above, it is respectfully recommended to the District Court that Defendant's Motion to Suppress (Doc. 19) be **DENIED**.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this 20 day of October, 2009.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:

JOSEPH HAAS, Clerk

By Summer White, Deputy

(SEAL)